UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ANNA MAGEE, ET AL. | CASE NO. 3:20-CV-00418 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| DICKS SPORTING GOODS, INC. | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, is a motion for leave to file a first supplemental and amending complaint, plus an associated request to remand [doc. # 11], filed by plaintiffs Anna Magee and Andrew Magee. The motion is opposed. For reasons assigned below, the motion for leave to amend is GRANTED, and, therefore, it is recommended that the request for remand be GRANTED, and that this matter be REMANDED to the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana.

### Background

On February 10, 2020, Anna Magee (hereinafter, sometimes referred to as "Magee") and her husband, Andrew Magee, both Louisiana domiciliaries, filed the instant suit for damages in the 4th Judicial District Court, for the Parish of Ouachita, State of Louisiana, against defendants Dick's Sporting Goods, Inc. ("DSG"), and John Doe, an unknown DSG employee. (Petition). Magee alleged that on or about May 25, 2019, John Doe was escorting her through the DSG Monroe store when she suddenly tripped over an improperly installed display floor mat, thereby causing her to sustain severe injuries and damages. *Id*. Magee asserted that the improperly installed floor mat constituted an unreasonably dangerous defect in the premises. *Id*. As a

1

result of the fall, Magee suffered severe and debilitating injuries to her mind and body, including injuries to her right leg that required surgery.  *Id.*  Plaintiffs seek recovery against defendants for all of their resulting and related damages, including Andrew Magee's claim for loss of consortium.  *Id.*

On April 3, 2020, DSG removed the case to federal court on the basis of diversity jurisdiction.  *See* Notice of Removal.  DSG established that the named parties were completely diverse and that the amount of controversy exceeded $75,000.  *Id.*; *see also* Elec. Juris. Review Finding [doc. # 9].  DSG aptly noted that the citizenship of the John Doe defendant was immaterial because, by law, the citizenship of defendants sued under fictitious names is disregarded.  28 U.S.C. 1441(b)(1).  Nonetheless, DSG further argued that even if John Doe's identity *were* known, the as-yet-to-be-named party should be considered "improperly joined," such that his citizenship still must be disregarded for purposes of diversity jurisdiction.  (Notice of Removal).

On May 19, 2020, the parties held their Rule 26(f) conference, and on May 21, 2020, the court issued a scheduling order that included a July 23, 2020, deadline for the joinder of parties and amendment of pleadings.  *See* doc. #s 8 & 10.  Discovery commenced.

On July 23, 2020, plaintiffs filed the instant motion for leave of court to supplement and amend her complaint to substitute Chris Deshazo for the unknown "John Doe" defendant, and to join two additional defendants:  Quinton Love, another DSG employee; and Ace American Insurance Company ("Ace"), DSG's liability carrier.  *See* Prop. 1st Suppl. & Amend. Compl. [doc. # 11-2].  Both Deshazo and Love are Louisiana domiciliaries, and thus, the joinder of

either one will destroy the court's diversity jurisdiction.[1] Consequently, in the event that the court decides to grant plaintiff's motion for leave to amend to join one or more of the non-diverse defendants, then plaintiffs also asked the court to remand the matter to state court. 28 U.S.C. § 1447(e).

On August 14, 2020, DSG filed its response to plaintiff's motion for leave to amend, whereby it opposed the joinder of Deshazo and Love, but not the addition of its insurer, Ace. (Opp. Brief [doc. # 13]). Plaintiffs filed their reply brief on August 20, 2020. (Pl. Reply [doc. # 14]). Accordingly, the matter is ripe.

## Law and Analysis

### I. Motion for Leave to Amend

A proposed amendment to substitute a named party for a fictitiously named party may be considered under Rule 15. *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 475 (5th Cir. 2001). Rule 15 provides that leave to amend shall be "freely [granted] when justice so requires." Fed.R.Civ.P. 15(a)(2). This rule is circumscribed, however, by 28 U.S.C. § 1447(e) which states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e); *Ascension Enters. v. Allied Signal*, 969 F. Supp. 359, 360 (M.D. La. 1997) (Section "1447(e) trumps Rule 15(a)."). Furthermore, if permitted, the substitution of a non-diverse, named defendant for a fictitiously named defendant will destroy subject matter jurisdiction and compel remand. *Doleac, supra*; 28

---

[1] Plaintiffs did not affirmatively set forth the citizenship of Ace.

U.S.C. § 1447(e).

Under these circumstances, courts are required to "scrutinize [the] amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). Specifically, the court must balance the defendant's interest in maintaining a federal forum, with the competing interest of avoiding parallel lawsuits by considering the following "*Hensgens* factors,"

> [1] the extent to which the purpose of the amendment is to defeat federal jurisdiction, [2] whether the plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will be significantly injured if amendment is not allowed, and [4] any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment would be permitted. If it permits the amendment of the non-diverse defendant, it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 367-368 (5th Cir. 2010) (citation omitted).

One issue that often is considered within the *Hensgens* rubric is whether plaintiffs have a reasonable possibility of recovery against the non-diverse defendant(s). For example, a plaintiff will not be "significantly injured" under *Hensgens* by a court's denial of leave to add a clearly meritless claim. *Wilson*, 602 F.3d at 368. Thus, the Fifth Circuit has held that it lies within a district court's "discretion" to deny a proposed amendment as futile, if there is no reasonable basis to predict that plaintiff will be able to recover against the would-be, non-diverse defendant. *Id*.

Nonetheless, an earlier Fifth Circuit panel made it clear that "[a] request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction (*i.e.,* a request fraudulently to join a party) would *never* be granted." *Cobb v. Delta*

4

*Exports, Inc.*, 186 F.3d 675, 678 (5th Cir.1999) (emphasis added).[2] In other words, the party opposing joinder has the opportunity to prevent joinder by demonstrating that plaintiff has no "colorable claim" against the proposed defendant. *Id*. This presents a potentially dispositive threshold issue, for if plaintiffs fail to state a colorable claim, then the court cannot permit amendment. *Cobb, supra*.

When deciding whether plaintiffs state a colorable claim for relief against the non-diverse defendant(s), the district court may permit "limited discovery into 'discrete and undisputed facts' that had been omitted from the complaint and that might preclude recovery against the in-state defendant . . ." *Wilson*, 602 F.3d at 373 (citing *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573-74 (5th Cir. 2004)).

    a)    <u>Colorable Claim</u>

In *Canter v. Koehring Co.*, the Louisiana Supreme Court detailed the circumstances under which a corporate officer or employee may be held individually liable for injuries sustained by third parties. *Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (citing *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973)). The court acknowledged that "the officer, agent, or employee may . . . be liable for injury resulting from his fault independent of any obligation imposed upon him by virtue of his employment duties, even though the fault occurs during the course of his employment." *Canter*, 283 So.2d at 722, n.7. In addition, liability may be imposed on such individuals even if the duty breached arises solely from the employment

---

[2] The court added that because the improper joinder doctrine (f/k/a the "fraudulent joinder doctrine") applies only to those non-diverse parties on the record in state court at the time of removal, it necessarily does not apply to post-removal joinders. *Cobb*, 186 F.3d at 677.

5

relationship. *Ford*, 32 F.2d at 936. Where the sole basis for the duty breached by the employee or manager is that imposed by virtue of the employment or agency relationship, then liability may be imposed under the following conditions:

1. The principal or employer owes a duty of care to the third person . . . breach of which has caused the damage for which recovery is sought.

2. The duty is delegated by the principal or employer to the defendant.

3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances-whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4. With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford*, 32 F.3d at 936 (citing, *Canter*, 283 So.2d at 721).

Stated differently, "[u]nder Louisiana law, an employee is personally liable if (1) the employer owes a duty of care to a third person; (2) the employer delegated that duty to a defendant-employee; (3) and the defendant-employee breached the duty through his own fault and lack of ordinary care." *Moore v. Manns*, 732 F.3d 454, 456–57 (5th Cir. 2013) (citations omitted).

It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This

duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6(A). Generally, "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm." *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813-814 (La.1993) (citations omitted). Furthermore, "[t]he owner or custodian is required to discover any unreasonably dangerous conditions on the premises and correct the condition or warn potential victims of its existence." *Hutchison v. Knights of Columbus, Council No. 5747,* 847 So.2d 665 (La. App. 4th Cir. 2003). The court reiterates that an employee can be held individually liable by a third person for breach of a duty that arises out of the employment or agency relationship between the employee and her employer. *Canter*, 283 So.2d at 722-723.

In their proposed pleading, plaintiffs allege that Magee went to the DSG Monroe store because she was interested in purchasing a Yeti cooler. *See* Prop. 1st Suppl. & Amend. Compl. At the store, Magee encountered DSG employee, Deshazo, who instructed her to follow him to the coolers. *Id*. However, instead of leading Magee down the main aisle to the coolers, Deshazo opted to take a short-cut, which bisected two vertical kayak displays that had been placed on rubber floor mats with raised edges in contravention of DSG policy by fellow DSG employee, Quinton Love. *Id*. As Magee tried to navigate between the kayak displays, she tripped over the raised edge of one of the floor mats that extended out past the kayaks. *Id*.

Plaintiffs allege that Love personally placed the mats that created the unreasonably dangerous condition that caused her accident and resulting injuries. Therefore, he necessarily was aware of the condition that he created and perpetuated. It matters not that he purportedly

7

was not present on the day that the unreasonably dangerous condition eventually claimed a victim. *See* Def. Opp. Brief, pg. 6. Whether the duty owed to Magee stems directly from Louisiana Civil Code Article 2315 or derivatively from the duty owed to Magee by DSG that the store had delegated to Love, it is manifest that plaintiffs allege sufficient facts to plausibly establish that Love breached a duty to Magee, which was a proximate cause of her resulting damages.[3]

While the allegations of fault against Deshazo are more tenuous, plaintiffs' claims against him are plausible, especially, if, as alleged, he was aware of the unreasonably dangerous condition, yet, for the sake of expedience, caused Magee to run the gauntlet between the raised kayak display mats.[4]

As the Fifth Circuit observed, an employee's and even a supervisor's "knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'" *Ford, supra* (citing *Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E. D. La.1992); *compare Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) (non-diverse defendants were not aware of the alleged unreasonably dangerous condition). In short, DSG has not established

---

[3] Plaintiffs contend that the liability of the prospective defendants should be analyzed via the duty owed by all individuals to all third-parties, rather than the duty that arises solely via their employment with DSG. The court need not resolve this issue because even under the derivative duty for employees recognized by *Canter*, plaintiffs plainly state a claim for relief against the prospective defendants.

[4] In its brief, DSG observed that Magee's daughter, Rebekah, was walking in front of Magee at the time of the fall and questions why plaintiffs did not seek to join her also as an additional defendant. (Def. Opp. Brief, pg. 7). To the extent that considerations of family affinity and harmony do not suffice to answer this rhetorical question, DSG remains free to seek to quantify Rebekah's fault upon remand so long as it has a good faith basis for doing so.

that plaintiffs have no "colorable claim" against the prospective non-diverse defendants.

      b)      *Hensgens* Considerations

Turning to the *Hensgens* factors, the undersigned observes that district courts have mulled various considerations to determine whether the purpose of a given amendment is to defeat federal jurisdiction. For example, courts will ask "whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862 (E.D. La. May 12, 2005); *see also Penny Realty Inc. v. Sw. Capital Servs., Inc.*, No. 08-0473, 2008 WL 2169437, at *2 (W.D. La. May 23, 2008). Alternatively, other cases have recognized that "as long as the plaintiff states a valid claim against the new defendants, the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002); *see also Tillman v. CSX Transp. Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991) (upholding a finding that where the plaintiff had a valid cause of action against a defendant, the principal purpose of the amendment was not to defeat federal jurisdiction).

More recently, this court has adopted the approach that as long as a plaintiff states a valid claim against the non-diverse defendant, then the purpose of the amendment is not to destroy diversity jurisdiction. *Diamond McCattle Co. LLC v. Range Louisiana Operating LLC*, Civil Action No. 18-0229, 2018 WL 6728587 (W.D. La. Dec. 21, 2018) (Doughty, J.). As discussed above, plaintiffs have a viable cause of action against the proposed defendants. Therefore, the purpose of the amendment is not to defeat diversity.

As to the timeliness of the proposed amendment, there is no indication that plaintiffs unduly delayed amendment. While plaintiffs admitted that they first discovered the identities of

9

Deshazo and Love by May 19, they did not uncover their job roles and responsibilities until after they took their depositions on July 1, 2020. The court cannot fault plaintiffs for deferring amendment until after they had confirmed, via deposition, that Deshazo and Love plausibly breached a duty that they owed to Magee. Thereafter, plaintiffs filed the instant motion a mere three weeks later and still within the deadline for the amendment of pleadings and joinder of parties. *See Jones v. Rent-A-Center East, Inc.*, 356 F.Supp.2d 1273, 1276 (M.D. Ala. 2005) (finding that plaintiffs were not dilatory because motion to amend was filed within the time allowed by the scheduling order); *Smith v. Robin America, Inc.*, Civil Action No. H-08-3565, 2009 WL 2485589, at * 6 (S.D. Tex. Aug. 7, 2009) (when a deadline for amendments has been set, and the deadline has been complied with, it would be unreasonable for the court to find the delay dilatory). Moreover, DSG failed to show that it was materially prejudiced by any purported delay.

As to prejudice if amendment were not permitted, the court observes that, so long as DSG and/or its insurer, Ace, are able to fund any judgment rendered in plaintiffs' favor, then plaintiffs likely will not suffer any financial repercussions if leave to amend were denied. Indeed, if Deshazo and Love were acting within the course and scope of their employment, then DSG will be liable for their negligence. *See* La. Civ. Code Art. 2320. However, DSG has yet to admit responsibility for its employees' actions. In fact, DSG has not even filed an answer to the suit.

In any event, it is conceivable that plaintiffs could suffer some prejudice in discovery and case preparation if Love and Deshazo were to remain non-parties. *See Ellender v. Rite Aid Pharmacy*, No. 08-0722, 2008 WL 4200716, at *2 n.5 (W.D. La. Sept. 8, 2008). In addition, if

leave to amend were denied, and plaintiffs wished to pursue their claims against the individual defendants, then they would have to bear the burden of maintaining parallel lawsuits arising out of the same set of facts in both state and federal courts. Thus, this third factor no more than marginally weighs in favor of remand.

Finally, the other considerations "bearing on the equities" weigh in favor of remand. The possibility of parallel lawsuits threatens judicial resources as well as the time and resources of the witnesses in the case. Moreover, there would be a danger that the courts could reach inconsistent results. In addition, the proceedings have not reached the dispositive motion stage, nor is trial imminent. Discovery is ongoing and any discovery conducted thus far may be utilized upon remand.

The court is keenly cognizant of removing defendant's interest in retaining their chosen federal forum. However, plaintiffs enjoy a concomitant interest in preserving the state court forum that they chose originally. As Judge Rubin once remarked, "[f]orum-shopping is sanctioned by our judicial system. It is as American as the Constitution, peremptory challenges to jurors, and our dual system of state and federal courts." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir.1983). "The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause." *Id.* In short, forum-shopping is an argument that cuts both ways.

The court also shares DSG's stated concern that individual employees may be subject to personal liability for acts that they likely performed for, or at the behest of their employer. However, it is of no moment that the employer might be vicariously liable for the actions of its

11

employee. *Ford, supra*. Furthermore, the possibility of dual layers of potentially redundant liability presents an issue that remains within the particular province of the Louisiana legislature to redress.[5] In the meantime, this court is constrained to apply the law in its current form.

In sum, the *Hensgens* factors, when considered in their totality, weigh in favor of allowing the proposed amendment.

## II.    Remand

The joinder of a non-diverse defendant and/or the substitution of a non-diverse, named party for his fictitious alias destroys the court's subject matter jurisdiction. *Doleac, supra*; *Cobb, supra*. Once joinder or substitution of a diversity-destroying defendant is permitted, remand to state court is not merely discretionary, it is mandatory. *Id.*; 28 U.S.C. § 1447(e).

### Conclusion

For the foregoing reasons,

IT IS ORDERED that plaintiffs' motion for leave to file a first supplemental and amending complaint [doc. # 11] is GRANTED.[6] As a result,

IT IS RECOMMENDED that plaintiffs' request for remand [doc. # 11] be GRANTED, and that this matter be REMANDED to the Fourth Judicial District Court for the Parish of

---

[5] In the wake of *Canter*, which permitted injured workers to file suit against their co-employees -- notwithstanding their employers' workers compensation immunity, the legislature amended the workers' compensation statute to preclude negligence suits brought against co-employees.

[6] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

Ouachita, State of Louisiana.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 31st day of August 2020.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE